UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JOSEPH JOHNSON, *pro se*, :
 :
                                       Petitioner, :
 :
                                   -against- :
 :
JAMES CONWAY, Superintendent, :
Attica Correctional Facility, :
 :
                                  Respondent. :
----------------------------------------------------------x

**MEMORANDUM AND ORDER**

08-CV-3302 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

On June 24, 2008, *pro se* Petitioner Joseph Johnson ("Petitioner") timely filed the instant action in the Southern District of New York, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Docket Entry No. 3 ("Pet.") at 1.) Petitioner makes two claims for habeas relief: (1) that he was "denied [his] due process right to a fair trial by the prosecutor's violation of [the trial court's] *Sandoval* ruling," (Pet. 10) and (2) that the prosecutor made an "unfair summation," also, presumably, in violation of his due process rights. (*See* Pet. 12). The action was transferred to this court on August 6, 2008. Counsel for Respondent, the Kings County District Attorney, responded to the petition on November 12, 2008, opposing both of Petitioner's claims for relief. (*See generally* Docket Entry No. 5 ("Resp.").) After Petitioner failed to timely file a reply, the court provided him additional time in which to do so, in light of his *pro se* status. As Petitioner did not reply by the new deadline, and has not replied as of the date of this Order, the court deems the petition to be fully briefed and ripe for decision. For the reasons set forth below, the petition is denied in its entirety.

I.  **BACKGROUND**

According to her testimony, Larysa Bosenko was met by her husband, Oleh Bosenko, at a subway station in the Sheepshead Bay neighborhood of Brooklyn, New York, upon her return from work at approximately 1:15 AM on October 30, 2002. (Tr. 201.) As they walked together, Mrs. Bosenko saw a man and woman approaching them from behind, each armed with a handgun. (Tr. 204–06.) They began running at the Bosenkos, screaming that they wanted Mrs. Bosenko's bag. (Tr. 205.) Mr. Bosenko shielded his wife from the assailants with his body, and as they attempted to get around him, he struck at the male assailant. (Tr. 208.) Two shots were fired and both struck Mr. Bosenko, who clutched at his wife, causing both of them to fall to the ground. (Tr. 208–11.) The assailants then wrestled away Mrs. Bosenko's bag and ran off with it. An NYPD officer arrived at the scene and accompanied Mr. Bosenko to Coney Island Hospital, where he died within ten minutes of his arrival from gunshot wounds to the chest and thigh. (Tr. 190–91; 320.)

Among the items in Mrs. Bosenko's stolen bag was a MetroCard. (Tr. 202.) Two weeks after the shooting, the police arrested a man named Raheem Coakley, who was in possession of this MetroCard. (Tr. 296–97.) Coakley told the police that Petitioner had given it to him. (Tr. 297.) Petitioner was arrested shortly thereafter and placed in custody. (Tr. 247–48.) According to police testimony, Petitioner was read his *Miranda* rights, which he waived orally and in writing. (Tr. 250–56.) After Petitioner had been in custody for several hours and following questioning by several detectives, one of the detectives informed Petitioner that Mr. Coakley had told them about the MetroCard, and also informed Petitioner that an eyewitness could identify him as one of the shooters. (Tr. 256–58; 288–89.)

Petitioner, who appeared alert and sober to the police, then gave a statement; since he did not want to write it out, a detective did so for him, and Petitioner signed it. (Tr. 258–60.) According to this statement, Petitioner and a woman named Naquasia followed a couple from the subway station, and approached them from behind with their guns out. (Tr. 261–62.) After an altercation with the man, two shots were fired, and Petitioner, not knowing the man was shot, took the purse and ran away with Naquasia. (Tr. 261–62.) Petitioner also made a second, videotaped statement, which was in substance the same as the first one. (Tr. 266–67.)

Following the videotaped statement, the police placed Petitioner in a lineup. (Tr. 271–72.) Mrs. Bosenko identified Petitioner as the male assailant. (Tr. 217–18.) A week later, Mrs. Bosenko saw a lineup composed of women, and identified Naquasia Pollard as the female assailant. (Tr. 218–19.)

Ms. Pollard pled guilty to robbery in the first degree and received a promise of eighteen years' imprisonment in exchange for her testimony against Petitioner. (Tr. 377.) At Petitioner's trial in the New York State Supreme Court, Kings County, she claimed that, on the night in question, she and Petitioner decided to "rob somebody," and followed a couple from the Sheepshead Bay train station. (Tr. 365–66.) Ms. Pollard largely corroborated Mrs. Bosenko's testimony of the events leading up to the shots. (*See* Tr. 368–70.) She also testified that both shots were fired as Petitioner and Mr. Bosenko fought for Petitioner's handgun. (Tr. 370–71.) After the shots, Petitioner grabbed Mrs. Bosenko's bag as she lay over her husband's fallen body; Petitioner hit Mrs. Bosenko with the butt of his handgun until she let go, and the two assailants ran off. (Tr. 372–73.)

Petitioner took the stand in his own defense, and contested much of the prosecution witness' testimony. (*See generally* Tr. 420–64.) He denied committing the charged crimes,

claiming he was high at the time of his arrest, the written statement was not his, and he had been coerced into making the videotaped statement. (Tr. 420, 423, 426, 428–32.)

Petitioner was convicted on April 16, 2004 of murder in the second degree and criminal possession of a weapon in the second degree under N.Y. PENAL LAW §§ 125.25(3) and 265.03(2), respectively. He was sentenced to concurrent prison terms of twenty-five years to life for the murder charge and sixteen years to life for the weapon possession charge. (Sentencing Tr. 13.)

Petitioner made a timely direct appeal to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"), claiming that he was denied his due process right to a fair trial by the prosecutor's violation of the trial court's *Sandoval* ruling, and unfair summation.[1] The Appellate Division affirmed the conviction on November 8, 2006, holding that these two claims—which are the same as those raised in the instant petition—were unpreserved for appellate review. *People v. Johnson*, 34 A.D.3d 496 (2d Dep't 2006). The Appellate Division further held that the improper summation claim was meritless, although it provided no reasoning. *See id.* Petitioner then sought leave to appeal from the New York State Court of Appeals on the new ground that he had received ineffective assistance of counsel at trial because of his lawyer's failure to object either to the *Sandoval* violation or to the improper summation.[2] The Court of Appeals denied leave to appeal on March 28, 2007. *People v. Johnson*, 8 N.Y.3d 923 (2007). Petitioner did not file a Petition for a writ of certiorari to the United States Supreme Court.

---

[1] (Br. for Def.-Appellant 2.) Petitioner later supplemented his direct appeal with three additional claims: denial of his right to be present at every stage of trial; denial of his right to confront a witness against him; and the tailoring of police testimony to nullify constitutional objects. (*See generally* Supp. Br. for Def.-Appellant.) None of these claims are raised in the instant petition.

[2] Petitioner does not raise the ineffective assistance of counsel claim in the instant petition.

## II. DISCUSSION

### A. Standard of Review[3]

"Federal habeas review is barred if the constitutional claim was denied by a state court on a state procedural ground that is both 'independent of the merits of the federal claim and an adequate basis for the court's decision.'" *Brown v. Ercole*, 353 F. App'x 518, 519 (2d Cir. 2009) (quoting *Harris v. Reed*, 489 U.S. 255, 260 (1989)). This is so even if the state court also rejected the merits of the claim in an alternative holding. *Harris*, 489 U.S. at 264 n.10. "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." *Dunman v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schulp v. Delo*, 513 U.S. 298, 321 (1995); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "'[A]ctual innocence means factual innocence, not mere legal insufficiency.'" *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The "adequate and independent" state ground bar may also be bypassed by a showing of good cause for the procedural default and resulting prejudice. *See Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citations omitted).

When a state court has adjudicated a petitioner's federal claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts the scope of federal habeas review of state convictions to instances where the state court's adjudication:

---

[3] Because Petitioner is proceeding *pro se*, the court holds his pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court will furthermore interpret the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable determination" is one in which "the state court indentifie[d] the correct governing legal principle from [the Supreme Court's] decision but unreasonably applie[d] the principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. Furthermore, "[b]ecause a § 2254 petition seeks to overturn 'a presumptively valid judgment of conviction,' the petitioner bears the burden of proof throughout the habeas proceeding." *Pignataro v. Poole*, 2010 WL 2501009, at *1 (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1094 (2d Cir. 1990)).

### B. Both Claims are Procedurally Barred

As noted in Part I, *supra*, the Appellate Division plainly stated that both of Petitioner's constitutional claims were unpreserved for appellate review. *Johnson*, 32 A.D.3d at 496. Although the Appellate Division did not elaborate, its citations indicate that the claims were unpreserved because Petitioner's counsel did not make a contemporaneous objection during trial, as required under New York law. *See id.* (citing N.Y. CRIM. PROC. LAW § 470.05; *People v. Nuccie*, 57 N.Y.2d 818, 819 (1982); *People v. George*, 2 A.D.3d 457 (2d Dep't 2003)). As New

6

York's contemporaneous objection law is an "adequate and independent" state ground, *see Garcia v. Lewis*, 188 F.3d 71, 78–79 (2d Cir. 1999), federal habeas review of these claims is precluded. *See Brown*, 353 F. App'x at 519; *see also Degrijize v. Artuz*, 134 F. App'x 460, 461 (2d Cir. 2005) (citing *Harris*, 489 U.S. at 263).

Notwithstanding the above, habeas review might still be appropriate if Petitioner showed cause for his procedural default and prejudice, or demonstrated how a fundamental miscarriage of justice would occur otherwise. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Jimenez*, 458 F.3d at 138. The latter is inapplicable because Petitioner neither claims actual innocence nor sets forth any facts indicating why failure to consider his claims would result in a fundamental miscarriage of justice.[4] *See Schulp*, 513 U.S. at 319; *see also Pignataro*, 2010 WL 2501009, at *1 (Petitioner bears burden of proof throughout habeas proceeding). Regarding the former, Petitioner indicated on direct appeal that his trial counsel's ineffective assistance was the cause of his state procedural default. (*See* Letter from Erica Horwitz, Petitioner's Appellate Advocate, to the Hon. Eugene F. Pigott, Jr., Judge of the Court of Appeals (Dec. 29, 2006)). Notably, Petitioner does not reference ineffective assistance at all in the instant action, nor does he address the issue of prejudice stemming from his default. Despite the fact that both of Petitioner's claims appear to be procedurally barred, the court will briefly examine their merits, primarily in light of his *pro se* status. *See Haines*, 404 U.S. at 520; *Triestman*, 470 F.3d at 474; *see also Schulp*, 513 U.S. at 319 ("habeas corpus is, at its core, an equitable remedy").

---

[4] Indeed, the instant petition merely restates the same arguments, virtually word for word, that were set forth in Petitioner's direct appeal. (*Compare* Pet. 10–11 *and* Pet. 12–13 *with* Br. for Def.-Appellant 35–37 *and* 38–41.)

### 1. Prosecutor's Alleged *Sandoval* Violation

As previously noted, Petitioner's first claim for habeas relief is that he was "denied [his] due process right to a fair trial by the prosecutor's violation of [the trial court's] *Sandoval* ruling." (Pet. 10.) In New York, a defendant may request a pretrial hearing to determine whether his prior criminal record may be used to impeach his credibility should he elect to testify. *See generally People v. Sandoval*, 34 N.Y.2d 371 (1971). "A claim based on an alleged *Sandoval* violation deals with an evidentiary question and presents an issue for habeas relief only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right." *Taylor v. Poole*, 2010 WL 419968, at *9 (W.D.N.Y. Jan. 29, 2010) (citations omitted). "The evidence introduced must be 'so extremely unfair that its admission violates the fundamental conceptions of justice,' i.e., where such evidence is 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Id.* (quoting *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998)).

Here, Petitioner's *Sandoval* hearing established that he had two prior convictions, for attempted robbery in the first degree in 1994, and robbery in the second degree in 1995. (Tr. 101–04.) The trial court limited inquiry on the former to whether Petitioner had committed the robbery in question, and limited inquiry on the latter to the mere fact of conviction. (Br. for Def.-Appellant 32–33.) At trial, after Petitioner took the stand and testified that he had previously been convicted of a felony, the prosecutor asked Petitioner on cross-examination:

> Q. Now, Mr. Johnson, another part of your [videotaped] statement [made in the police precinct after arrest], where you asked to volunteer something, you said something about that you had never been involved in any violence before. . . . Was that a true statement, sir?
> A. As far as a crime is committed, or just violence, period?
> Q. Part of a violent crime. . . . That was a true statement?

> A. As true as they come. I believe so.
> . . .
> Q. The felony that you were convicted of, sir, that was a violent felony, wasn't it?
> A. No.
> Q. No? Do you remember what the felony was that you were convicted of?
> . . .
> A. I believe it was second degree robbery [the 1995 conviction].
> . . .
> Q. Is it your position that taking property by force is not the use of violence?
> A. I never said that's what happened.
> . . .
> Q. You acknowledge, sir – do you acknowledge that the crime for which you pled guilty was a violent felony?
> A. No. There was no violence.
> Q. Then, perhaps, sir, maybe you'd better tell us what it was about if you say there was no violence.
> . . .
> A. Me and my friends of mine [sic] Denny Farrar, we lived in the neighborhood. Actually, it happened on the same block in which we lived. We were teenagers.

(Tr. 490–92.) The trial court cut short the rest of Petitioner's answer due to a concern about Peitioner's age at the time of the incident,[5] and the prosecutor subsequently withdrew the question. (*See* Tr. 492–93.)

Petitioner argues that this exchange was "highly prejudicial" because "[j]urors in a first-degree robbery and felony murder case could not be expected to put out of their mind the fact that [he] had a prior first degree robbery arrest and resulting second degree robbery conviction . . . ." (Pet. 10–11.) However, prejudice "can be cured with proper instructions," and "juries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540–41 (1993) (internal quotation marks omitted); *see also CSX Transp., Inc. v. Hensley*, 129 S. Ct. 2139, 2141 (2009); *United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002). Here, the trial court provided "proper instructions" regarding the appropriate consideration of Petitioner's prior convictions. (*See* Tr. 595 (instructing jury that they could not consider "the fact that the defendant has

---

[5] The trial court was evidently mistaken in its belief that Petitioner's 1994 conviction was a youthful offender adjudication. (Br. for Def.-Appellant 32–33.)

9

previously been convicted of a crime or committed bad acts" as proof, but only to help in "evaluat[ing] his credibility")), and the court assumes these instructions were followed and cured any prejudice. *See Zafiro*, 506 U.S. at 540–41.

Furthermore, there is no indication that this exchange removed any "reasonable doubt that may have existed on the record without it." *Dunnigan*, 137 F.3d at 125. Indeed, overwhelming evidence pointed to Petitioner's guilt, including testimony regarding the stolen MetroCard, Petitioner's two confessions, the positive identifications by a victim, Mrs. Bosenko, and the testimony of Petitioner's accomplice. Furthermore, Petitioner's testimony in his own defense was clearly not credited by the jury, and it is well established that credibility determinations are beyond the scope of federal habeas review. *See Rodriguez v. Hoke*, 1996 WL 1088919, at *3 (E.D.N.Y. June 19, 1996) (citing *Schlup*, 513 U.S. at 330; *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989)). In sum, any violation of the trial court's *Sandoval* ruling did not introduce evidence "so extremely unfair" that it "violate[] the fundamental conceptions of justice," and habeas relief is not warranted on the merits of this claim. *Dunnigan*, 137 F.3d at 125.

### 2. Prosecutor's Allegedly Improper Summation

Petitioner's second claim for habeas relief is that the prosecutor made an "unfair summation" in violation of his due process rights. (*See* Pet. 12). However, "[i]t is well settled that the propriety of comments made by a prosecutor during summation generally does not present a meritorious federal question." *Sims v. Ercole*, 2010 WL 1685434, at *9 (S.D.N.Y. Apr. 23, 2010) (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)). Only where "the improper statements cause substantial prejudice to the defendant" does such a claim rise to the level of a denial of due process. *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) (citation

omitted). "In determining whether . . . misconduct amounted to substantial prejudice, we examine 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" *Id.* (quoting *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990)); *see also Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (other factors include, *inter alia*, whether objectionable content was invited by defense).

Petitioner references several statements made during the prosecutor's summation which, he implicitly argues, caused him substantial prejudice. (*See* Pet. 12–13.) However, to the extent that any of these statements constituted "misconduct" on the part of the prosecutor, the court does not find them to be particularly severe. *See Bradley*, 918 F.2d at 343 (severity of misconduct one factor in determining substantial prejudice). For example, while the prosecution referred to Petitioner as "a convicted felon," a fact already in evidence, he did so in the context of arguing that the jury should not credit Petitioner's testimony, and added the caveat that being a felon "in and of itself doesn't mean much." (*See* Tr. 537–38.) The prosecution also referred to Petitioner's drug habit. (*See* Tr. 538.) While this may not have been directly relevant to his credibility, Petitioner had previously admitted on cross-examination that he had a crack-cocaine habit, was high at the time of his arrest, and routinely deceived his own family to obtain money to finance his habit. (Tr. 423, 485–86.) The prosecutor also asked the jury why, given that Mrs. Bosenko "was 100 percent" correct in identifying Ms. Pollard in a line-up, "shouldn't she be 100 percent about the man?" (Tr. 564.) One can question this logic, but suggesting that the jury draw such an inference about a witness's powers of recollection does not constitute prosecutorial misconduct.

Several of the prosecutor's summation comments were undoubtedly improper. For example, the statement, "It's for you to believe what I frankly submit to you is a very farfetched

story" was an improper expression of personal belief. (Tr. 539); *see People v. Bailey*, 58 N.Y.2d 272, 277 (1983). However, the severity of this is diminished by the fact that the statement was made in the context of asking the jury to infer from the totality of Petitioner's testimony that he was not being truthful, and in discussing Petitioner's motivation to lie, neither of which were improper. (*See* Tr. 538–40); *see also People v. Galloway*, 54 N.Y.2d 396, 399 (1981) ("the prosecutor's characterization, in summation, of the defense's contention . . . as a 'smokescreen' or 'a red herring' and his aspersions on the credibility of the defendant's . . . testimony did not exceed the broad bounds of rhetorical comment permissible in closing argument").

The statement that Petitioner "had the opportunity to show that he was innocent and that he could prove it . . . . Did any of you hear him prove that he was innocent?" was unquestionably an improper instance of burden-shifting. (Tr. 567.) However, the trial court immediately intervened *sua ponte*, reminding the jury that "the defendant is under no obligation to prove or disprove anything, notwithstanding the fact that he took the stand." (*Id.*) The trial court later reiterated in the final jury charge that, "even though the defendant introduced evidence, the burden of proof remains on the People." (Tr. 571–72.) Indeed, the trial court's jury instructions mitigated virtually all of the prejudice Petitioner claims to have suffered as a result of the prosecutor's summation. (*See, e.g.*, Tr. 505 (summations are not evidence); Tr. 595 (prior conviction/bad acts may not be considered as proof of guilt); Tr. 570 (jury's recollection of facts controls, not characterization by counsel); Tr. 580–82 (providing standards for evaluating eyewitness identification).) Accordingly, the "curative measures" factor weighs heavily against a finding of substantial prejudice. *Bradley*, 918 F.2d at 343.

Regarding the "certainty of conviction" factor, as noted *supra* in Part II.B.1, overwhelming evidence pointed to Petitioner's guilt. This weighs heavily against any finding of

substantial prejudice to Petitioner stemming from the prosecution's comments on summation. *See Bradley*, 918 F.2d at 343. Finally, the court notes that many of the summation comments with which Petitioner takes issue were in fact invited by the defense. *See Darden*, 477 U.S. at 182. For example, defense counsel called into question the accuracy of Mrs. Bosenko's identifications of her assailants during opening statements, on cross-examination, and during summations. (*See* Tr. 17, 238–44, 527).

In sum, the totality of the factors the court must consider pursuant to clearly established federal law do not support a finding that the prosecutor's summation substantially prejudiced Petitioner. Accordingly, the court finds that he was not denied due process of law by said summation, regardless of the fact that several comments were improper, and habeas relief pursuant to this claim is denied.

**III. CONCLUSION**

For the reasons set forth above, the petition is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

DATED:   Brooklyn, New York
         October 6, 2010

                                        _____/s/_____
                                        DORA L. IRIZARRY
                                        United States District Judge